# EXHIBIT A
## TO CAMPBELL CERTIFICATION IN SUPPORT OF REMOVAL

**SAIBER LLC**
18 Columbia Turnpike, Suite 200
Florham Park, NJ 07932
(973) 622-3333
*Attorneys for Plaintiffs*

| | |
|---|---|
| BCB BANCORP, INC., individually, and as successor-in-interest to PAMRAPO BANCORP, INC.; KENNETH D. WALTER; KENNETH POESL; ROBERT DORIA; DANIEL MASSARELLI; PATRICK CONAGHAN; HERMAN BROCKMAN; and THE ESTATE OF JOHN MORECRAFT, <br><br> Plaintiff, <br><br> vs. <br><br> PROGRESSIVE CASUALTY INSURANCE COMPANY; COLONIAL AMERICAN CASUALTY AND SURETY COMPANY; KEITH KUBE; and DAVID SHAEV PROFIT SHARING ACCOUNT F/B/O DAVID SHAEV, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: HUDSON COUNTY DOCKET NO: HUD-L-_____-13 <br><br><br> Civil Action <br><br><br> **COMPLAINT, DESIGNATION OF TRIAL COUNSEL AND CERTIFICATIONS** |

Plaintiffs BCB BANCORP, INC., individually ("BCB"), and as successor-in-interest to PAMRAPO BANCORP, INC. ("Pamrapo"); KENNETH D. WALTER; KENNETH POESL; ROBERT DORIA; DANIEL MASSARELLI; PATRICK CONAGHAN; HERMAN BROCKMAN; and THE ESTATE OF JOHN MORECRAFT (collectively "Plaintiffs") hereby allege as their Complaint against Defendants as follows:

## INTRODUCTION

1.  This is an action for declaratory relief pursuant to N.J.S.A. 2A:16-50, *et seq.* and for breach of contract, money damages, supplemental relief thereto and any other appropriate relief to settle questions concerning coverage under: (1) a Directors & Officers Liability Policy issued by PROGRESSIVE CASUALTY INSURANCE COMPANY to PAMRAPO BANCORP, INC. and others; and (2) a D&O SelectPlus Insurance Policy issued by COLONIAL AMERICAN CASUALTY AND SURETY COMPANY to BCB

BANCORP, INC. for payment of defense costs and indemnity with respect to claims asserted against Pamrapo, KENNETH D. WALTER; KENNETH POESL; ROBERT DORIA; DANIEL MASSARELLI; PATRICK CONAGHAN; HERMAN BROCKMAN; and THE ESTATE OF JOHN MORECRAFT (collectively "the Individual Directors") and BCB in putative class action lawsuits filed in the New Jersey Superior Court under the captions Kube v. Massarelli, et al., Docket No. HUD-C-89-09 and David Shaev Profit Sharing Account F/B/O/ David Shaev v. Massarelli, et al., Docket No. HUD-C-96-09, which actions have been consolidated under In Re Pamrapo Bancorp Shareholder Litigation, Lead Docket No. HUD-L-3608-12.

## THE PARTIES

**A.** **Plaintiffs**

2. Plaintiff BCB is a corporation organized and existing under the laws of New Jersey with a principal place of business located in Bayonne, New Jersey.

3. Plaintiff Pamrapo was a corporation organized and existing under the laws of New Jersey with a principal place of business located in Bayonne, New Jersey.

4. Plaintiff Kenneth D. Walter was a director and officer in various positions with Pamrapo since approximately 2001 and is presently a member of the Board of Directors of BCB.

5. Plaintiff Kenneth Poesl was, at all relevant times, a director of Pamrapo.

6. Plaintiff Robert Doria was at all relevant times a director of Pamrapo.

7. Plaintiff Daniel Massarelli was, at all relevant times, Chairman of the Board of Pamrapo.

8. Defendant Patrick Conaghan was, at all relevant times, a director of Pamrapo.

9. Plaintiff Herman Brockman was, at all relevant times, a director of Pamrapo.

10. Plaintiff the Estate of John Morecraft was substituted for John A. Morecraft, who was, at all relevant times, a director of Pamrapo until his death in August 2009.

11. Plaintiffs Kenneth D. Walter, Kenneth Poesl, Robert Doria, Daniel Massarelli, Patrick Conaghan, Herman Brockman and the Estate of John Morecraft are referred to collectively throughout as the "Individual Directors."

B.   **Defendants**

12. Upon information and belief, defendant Progressive Casualty Insurance Company ("Progressive") is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business in Mayfield Village, Ohio.

13. Upon information and belief, defendant Colonial American Casualty and Surety Company ("Colonial American") is a corporation organized and existing under the laws of the State of Maryland, with a principal place of business in Owings Mills, Maryland.

14. Upon information and belief, purported class plaintiff Keith Kube owned shares of Pamrapo prior to the merger with BCB and has continued to own shares of BCB following completion of the merger. His claims against Pamrapo, the Individual Directors and BCB are brought individually and on behalf of similarly-situated shareholders of Pamrapo, whose identities are currently unknown.

15. Upon information and belief, purported class plaintiff David Shaev Profit Sharing Account F/B/O David Shaev owned shares of Pamrapo prior to the merger with BCB and has continued to own shares of BCB following completion of the merger. Its claims against Pamrapo, the Individual Directors and BCB are brought individually and on behalf of similarly-situated shareholders of Pamrapo, whose identities are currently unknown.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over these Defendants because upon information and belief each is a resident of New Jersey; licensed or otherwise authorized to do business in New

Jersey; have within all relevant time periods, transacted the business of selling insurance in New Jersey; and/or insured operations of their policyholders in New Jersey.

17. Venue is proper in this County pursuant to R. 4:3-2 because Plaintiffs conduct business in this County, and the cause of action arose, in part, in this County. Venue is also proper in this County because, upon information and belief, Defendants reside in this County; conduct business in this County; and/or conducted business in this County during the relevant time period.

## NATURE OF THE CAUSES OF ACTION

**A.** **The Pamrapo-BCB Merger and Underlying Claims**

18. On or about June 30, 2009, Pamrapo and BCB announced the signing of a definitive merger agreement under which Pamrapo would merge into BCB and the shareholders of Pamrapo would receive 1.00 share of BCB for each share owned of Pamrapo.

19. On or about the same date, Pamrapo filed a Form 8-K with the United States Security and Exchange Commission ("SEC") wherein it disclosed the Agreement and Plan of Merger for the proposed transaction ("the Merger Agreement").

20. On or about July 9, 2009, Keith Kube filed a putative class action on behalf of himself and all other similarly situated shareholders of Pamrapo in the New Jersey Superior Court under the caption Kube v. Massarelli, et al., Docket No. HUD-C-89-09 against Pamrapo, Pamrapo's Board of Directors (the Individual Directors named as Plaintiffs herein) and BCB seeking to enjoin the merger, obtain an accounting and an award of counsel fees. ("the Kube Action").

21. In the Kube Action, it is alleged that the Pamrapo Board of Directors breached their fiduciary obligations to Pamrapo's shareholders by failing to engage in an honest and fair sale process through agreeing: (i) to sell Pamrapo for inadequate consideration, thus

failing to maximize the value of shareholders' Pamrapo shares; and (ii) to certain preclusive deal protection devices in the Merger Agreement that operate to ensure that no competing offers would emerge for Pamrapo, including "no shop" and "standstill" provisions.

22. It is also alleged in the Kube Action that Pamrapo and BCB conspired with, and aided and abetted, the Board of Directors' breaches of fiduciary duties by initiating a course of conduct designed to and did: (i) permit BCB to attempt to eliminate the shareholders' equity interest in Pamrapo pursuant to a defective sales process; and (ii) permit BCB to buy Pamrapo for an unfair price.

23. On or about July 24, 2009, another Pamrapo shareholder filed a similar action seeking similar relief in the New Jersey Superior Court alleging breaches of fiduciary duty against Pamrapo and the Pamrapo Board of Directors under the caption, David Shaev Profit Sharing Account F/B/O/ David Shaev v. Massarelli, et al., Docket No. HUD-C-96-09 ("the Shaev Action").

24. On or about September 10, 2009, the Kube Action and Shaev Action were consolidated under the caption In Re Pamrapo Bancorp Shareholder Litigation, Lead Docket No. HUD-L-3608-12 ("the Consolidated Action").

25. On or about October 16, 2009, a First Amended Complaint was filed in the Consolidated Action. The First Amended Complaint alleges that Defendants further failed to engage in an honest and fair sales process in connection with a materially misleading and/or incomplete Form S-4 Registration Statement filed jointly by BCB and Pamrapo with the SEC on October 13, 2009 which allegedly failed to disclose the underlying methodologies, projections, key inputs and multiples relied upon by Pamrapo's financial advisor and overall failed to disclose sufficient information for the shareholders to make

an informed decision on whether to vote in favor of the merger. Among other things, it is alleged that the Registration Statement provided no description of any process conducted by Pamrapo and/or its financial advisor to identify and contact third party buyers that may have offered more for Pamrapo.

26. The First Amended Complaint also added allegations of self-dealing against the Pamrapo Board of Directors, including examples of how individual directors stood to benefit personally from Pamrapo merger with BCB.

27. On or about November 16, 2009, a joint "Definitive Proxy Statement" was sent to the shareholders of both Pamrapo and BCB and filed with the SEC. It contained much of the same disclosures as did the "Preliminary Proxy Statement" of October 13, 2009.

28. The Pamrapo shareholders meeting to approve the merger was scheduled for December 22, 2009 but was postponed to February 11, 2010 to permit more time to distribute information about the merger.

29. Prior to the February date, Pamrapo and BCB provided "Supplemental Disclosures" to the Pamrapo shareholders, by way of an amended proxy statement, which contained additional financial information and information indicating that the proposed merger had been properly evaluated by Pamrapo and its advisors.

30. Thereafter, the shareholders meeting was held on February 11, 2010 where a majority of Pamrapo's common stock at that meeting voted in favor of the merger.

31. The merger was consummated on July 6, 2010. At that time Pamrapo was merged into BCB and ceased to exist.

32. Plaintiffs took no further action to prosecute until on or about July 19, 2011 when they moved again to amend the Complaint. The court granted that application and the Second Amended Complaint was filed in or around September 2011.

33. The Second Amended Complaint alleges that gross mismanagement of the Pamrapo Directors prior to the merger resulted in the $6 million in fines and penalties levied on Pamrapo by federal banking and law enforcement authorities which fines substantially reduced Pamrapo's value. Purported Class Plaintiffs seek maintenance of the action as a derivative action, certification as a class action, compensatory and restitution damages, and costs and fees.

34. The Second Amended Complaint contains counts for: (a) "double derivative claims" against the Individual Directors for "breach of fiduciary duty," "waste of corporate assets" and "unjust enrichment" purportedly brought on behalf of BCB; (b) "direct class claim for breach of fiduciary duty" against the Individual Directors as to all Pamrapo shareholders by "disloyally and unreasonably failing to engage in an honest and fair sale process," and failing in their duty to maximize value for Pamrapo and its shareholders; and (c) "direct class claim for aiding and abetting breaches of fiduciary duty" by the Individual Directors against Pamrapo and BCB.

35. By Order dated May 9, 2012 ("the Merits Order"), the Court dismissed the "double derivative claims" counts (Counts I-III) of the Second Amended Complaint.

36. By separate Order dated May 9, 2012 ("the Fees Order"), the Court granted Plaintiffs an "interim" award of attorneys' fees and litigation expenses and ordered Defendants to pay the amount of $356,875.80. An Amended Order dated June 1, 2012 clarified that the fees and costs awarded in the Fees Order shall be paid within 30 days. Neither Order apportioned liability for the award among the Defendants.

37. Plaintiffs herein sought leave to file an interlocutory appeal of the May 9, 2012 Merits Order and Fees Order, and to stay enforcement of the May 9, 2012 Fees Order and June 1,

2012 Amended Order pending appeal or alternatively upon posting of bond or cash deposit.

38. By Order dated July 13, 2012, the trial court granted the motion for a stay of the Fees Order and Amended Order, and ordered Plaintiffs herein to post a supersedeas bond for the amount set forth in the Amended Order, together with interest and costs.

39. Plaintiffs herein posted the supersedeas bond ordered by the trial court, with applicable interest and costs. Plaintiffs continue to incur interest and costs in connection with that bond.

40. The New Jersey Appellate Division denied Plaintiffs' motion seeking leave to file an interlocutory appeal.

**B.    The Insurance Policies**

**I.       The Progressive Policy**

41. Progressive issued Policy Number 10033813-02 to Pamrapo, Pamrapo Savings Bank, Pamrapo Service Corp. and Pamrapo Investment Company for the policy period June 15, 2009 to June 1, 2010 ("the Progressive Policy"). A copy of the Progressive Policy is attached as Exhibit A hereto.

42. Under Insuring Agreement A – Insured Persons Liability Coverage, Progressive agreed to pay on behalf of the "Insured Persons," "Loss" resulting from "Claims" first made during the "Policy Period" or the Discovery Period against the "Insured Persons" for "Wrongful Acts" for which the "Insured Persons" are legally obligated to pay, except for "Loss" the "Company" pays as indemnification.

43. Under Insuring Agreement B – Company Indemnification Coverage, Progressive agreed to pay on behalf of the "Company," "Loss" resulting from "Claims" first made during the "Policy Period" or the Discovery Period against the "Insured Persons" for "Wrongful

Acts" for which the "Company" has agreed to or is legally permitted or required by law to indemnify the "Insured Persons."

44. Under the Securities Liability Insuring Agreement to the Progressive Policy, Progressive agreed to pay on behalf of the "Company," "Loss" resulting from "Claims" first made during the "Policy Period" or the Discovery Period against the "Company" for which the "Company" is legally obligated to pay for "Wrongful Acts" which in whole or in part is based upon, arises from, or is in consequence of the purchase or sale of, or offer to purchase or sell, any securities issued by the "Company."

45. The Progressive Policy defines "Company" to include the entity or entities set forth in Item 1 of the Declarations. Pamrapo is one of the entities set forth as a Named Insured in Item 1 of the Declarations of the Progressive Policy.

46. The Progressive Policy defines "Insured Person," either in singular or plural, as any past, present or future director, member of the board of trustees, officer, "Employee," honorary or advisory director, or honorary or advisory member of the board of trustees of the "Company."

47. Each of the Individual Directors is an "Insured Person" under the Progressive Policy.

48. The Progressive Policy defines "Claim" as including a civil proceeding commenced by the service of a complaint or similar pleading against an "Insured Person" or against the "Company" for a "Wrongful Act" including any appeal from such proceeding.

49. The Progressive Policy defines "Wrongful Act" to mean any actual or alleged error, omission, misstatement, misleading statement, neglect or breach of duty by: (1) any "Insured Person" in the discharge of their duties while acting solely in the capacity as such; (2) any "Insured Person" while acting solely in the capacity as director, officer, or member of the board of trustees of a not-for-profit entity; or (3) the "Company" or any

person or entity for which the "Company" is legally responsible, but only to the extent that coverage is granted to the "Company" by Insuring Agreement made a part of the Policy.

50. The Progressive Policy defines "Loss" as "Defense Costs" and any amount which the "Insured" is legally obligated to pay resulting from a "Claim," including damages, judgments, settlements, and pre- and post-judgment interest.

51. The Progressive Policy defines "Defense Costs" as reasonable and necessary legal fees and expenses incurred in defending or investigating any "Claim" and the cost of appeal, attachment or similar bonds, but does not include salaries, wages, overhead or benefit expenses incurred by the "Insured."

52. Section VII(A) of the Progressive Policy provides in relevant part that Progressive does not have a duty to defend "Claims," but it has the right to associate with the "Insured" in the settlement and defense of any "Claim" that appears reasonably likely to involve Progressive.

53. Section VII(B) of the Progressive Policy provides in relevant part that subject to Section IX, Progressive, if requested by the "Insured," shall advance covered "Defense Costs" on a current basis, except when advancement of "Defense Costs" is prohibited by law or regulation. Section VII(B) also provides that prior to advancing "Defense Costs," Progressive shall be entitled to sufficient information and documentation as to the amount and purpose of any "Defense Costs" to enable it to evaluate the reasonableness and necessity of such "Defense Costs" and to verify that such "Defense Costs" were actually incurred.

54. Section IX(A) of the Progressive Policy provides that if in any "Claim" the "Insureds" are jointly and severally liable with others (including the "Company" even if no coverage is

extended for such "Claim" against the "Company") for "Loss," then: (a) 100% of the "Loss," other than "Defense Costs," incurred jointly by the "Insured Persons" and the "Company" shall be treated as "Loss" incurred solely by the "Insured Persons;" and (b) all other "Loss" shall be allocated between the "Insured Persons" and others based on the relative legal exposures of the parties to such "Claims."

55. Section IX(A) of the Progressive Policy further provides that if in any "Claim" the "Insureds" incur an amount consisting of both covered and uncovered "Loss" because the "Claim" includes both covered and uncovered matters, then the amount shall be allocated between covered and uncovered loss based on the relative legal exposures of the "Insureds" to the covered and uncovered matters.

56. Section IX(B) of the Progressive Policy provides that Progressive and the "Insured" agreed to use their best efforts to reach a proper allocation of "Defense Costs," and outlines a procedure if agreement on allocation cannot be reached.

57. The Progressive Policy contains a condition for Other Insurance or Indemnification, which provides that the Policy shall not be subject to the terms of any other insurance. All "Loss," including "Defense Costs," payable under the Policy shall be excess to: (1) any other existing insurance regardless of whether collectable, including but not limited to, any insurance under which there is a duty to defend, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided by the Policy; and (2) indemnification to which an "Insured" is entitled from any entity other than the "Company."

58. Progressive acknowledged coverage under the Progressive Policy for Pamrapo and the Individual Directors in connection with the Underlying Claims.

59. Progressive has also agreed to advance "Defense Costs" and advanced "Defense Costs" incurred on behalf of Pamrapo and/or the Individual Directors in connection with the Underlying Claims until approximately July 2010.

## II.   The Colonial American Policy

60. Colonial American issued Policy Number DOP 0002249-10 to BCB for the policy period October 18, 2008 to October 18, 2011 ("the Colonial American Policy"). A copy of the Colonial American Policy is attached as Exhibit B hereto.

61. The Colonial American Policy provides under Coverage Section 3-Entity Liability that Colonial American will pay on behalf of the "Insured" all "loss" resulting from any "entity claim" first made against the "Insured" during the policy period or the extended reporting period, if applicable, for an "entity wrongful act."

62. The Colonial American Policy defines "entity claim" under Coverage Section 3 to include a civil proceeding commenced by the service of a complaint or similar pleading.

63. The Colonial American Policy defines "entity wrongful act" under Coverage Section 3 as any actual or alleged act, error, neglect, omission, misstatement, misleading statement or breach of duty which shall have been committed or attempted, or which shall be alleged to have been committed or attempted by the "Insured" in his or her capacity as such.

64. The Colonial American Policy defines "loss" under Coverage Section 3 to mean any amount which the "Insured" is legally obligated to pay as a result of an "entity claim" including punitive or exemplary damages and the multiple portion of any multiplied damage award in excess of actual damages (to the extent such damages are insurable under the internal laws of any jurisdiction which has a substantial relationship to the "Insured," the "Company," the Insurer or such "entity claim"), judgments, prejudgment and post judgment interest, settlements and "defense expenses."

65. The Colonial American Policy defines "defense expenses" under Coverage Section 3 to mean reasonable costs, attorneys' fees, charges and expenses incurred by the "Insured" in the defense or appeal of an "entity claim" and the costs of attachment or similar bonds, but excluding salaries, wages, overhead or benefit expenses associated with "directors," "officers," or employees of the "Company" and further excluding any amount paid by any insurer pursuant to any other policy of insurance under which there is a duty to defend.

66. The Colonial American Policy defines "Insured" under Coverage Section 3 to mean the "Company" and any past, present or future natural person or employee of the "Company," other than a director or officer, who the "Company" directly compensates by salary, wages or commissions and who the "Company" directs and controls while the employee performs his or her duties as such.

67. The Colonial American Policy defines "Company" under Coverage Section 3 to include "Parent Company." The Colonial American Policy further defines "Parent Company" under Coverage Section 3 to mean the entity named in Item 1 of the Declarations. BCB is identified as "Parent Company" in Item 1 of the Declarations.

68. The Colonial American Policy contains a condition for Defense, Advancement of "Defense Expenses" and Settlement which provides, *inter alia*, that if pursuant to the Coverage Schedule in Item 3 of the Declarations, it is the duty of the "Insured" to defend "claims" under the applicable Coverage Section, the "Insured," not the "Insurer," has the duty to defend any "claim" and the "Insured" will choose defense counsel. The condition further provides that the "Insured" shall give the "Insurer" the right to associate itself in the defense, negotiation and settlement of any "claim" that appears reasonably likely to involve the coverage under such Coverage Section, and shall provide the "Insurer" with

such information, assistance and cooperation as the "Insurer" and its counsel may reasonably require.

69. The Defense, Advancement of "Defense Expenses" and Settlement condition to the Colonial American Policy also provides that, subject to the applicable retention, the "Insurer" shall, upon request, advance on a current basis otherwise covered "defense expenses" prior to the final disposition of a "claim," except when such payment is prohibited by any applicable law or regulation.

70. The Colonial American Policy also contains a condition for Acquisitions, Creations and Assumptions which provides, *inter alia*, in the event that, during the "policy period," the "Company" acquires or creates a "subsidiary" or acquires or assumes any assets or liabilities which either: (a) generate revenue from services or business in which the "Company" did not engage immediately prior to the acquisition or creation; or (b) represent an increase of more than 30% of the total assets or liabilities of the "Company", the coverage otherwise available under the policy will be afforded to such "subsidiary" and for "loss" in connection with any "liability claim" based upon or attributable to or arising from such acquired or assumed assets or liabilities for 90 days after the effective date of such transaction or event or until the end of the "policy period," whichever first occurs.

71. The Colonial American Policy also contains a condition for Allocation which provides that if in any "claim" the "Insureds" who are afforded coverage for such "claim" incur "loss" jointly with others (including "Insureds"), who are not afforded coverage for such "claim," or incur an amount consisting of both "loss" covered by this policy and "loss" not covered by this policy because such "claim" includes both covered and uncovered matters, the "Insurer" will pay 100% of "defense expenses" incurred only by the

"Insureds" as a result of such "claim" and, with respect to any settlement, judgment or other "loss," then the "Insureds" and the "Insurer" shall allocate such amount between covered "loss" and uncovered "loss" based upon the relative legal and financial exposures of the parties to covered and uncovered matters and, in the event of a settlement, based also upon the relative benefits to the parties from settlement of the covered and uncovered matters.

72. The Colonial American Policy defines "claim" under the "Common Definitions" to include any "liability claim." The Policy further defines "liability claim" under the "Common Definitions" to include a "director and officer claim" and any "entity claim."

73. Colonial American has acknowledged coverage under the Colonial American Policy for only BCB in connection with the Underlying Claims and has agreed to advance "defense expenses" incurred on behalf of BCB in connection with the Underlying Claims, subject to an unknown calculation of "allocation."

74. Colonial American has denied coverage under the Colonial American Policy for the Individual Directors in connection with the Underlying Claims.

**FIRST CAUSE OF ACTION**

**(Declaratory Judgment)**
**(Pamrapo and the Individual Directors against Progressive)**

75. The averments of paragraphs 1 through 74 are incorporated herein by reference as if set forth at length.

76. The Underlying Claims against the Individual Directors constitute "Claims" first made during the Policy Period against them as "Insured Persons" for "Wrongful Acts" for which they are legally obligated to pay, other than as "Loss" Pamrapo pays as indemnification.

77. The Underlying Claims against Pamrapo constitute "Claims" first made during the Policy Period against the Individual Directors as "Insured Persons" for "Wrongful Acts" for

{00761782.DOC}                                    15

which Pamrapo has agreed to or is legally permitted or required by law to indemnify the Individual Directors.

78. The Underlying Claims against Pamrapo also constitute "Claims" first made during the Policy Period against Pamrapo for which Pamrapo is legally obligated to pay for "Wrongful Acts" which in whole or in part is based upon, arises from, or is in consequence of the purchase or sale of, or offer to purchase or sell, any securities issued by Pamrapo.

79. Upon information and belief, all conditions precedent to Pamrapo's and the Individual Directors' claims for coverage under the Progressive Policy have been satisfied or waived.

80. An actual, present and justiciable controversy exists between Pamrapo and the Individual Directors and Progressive with respect to Pamrapo's and the Individual Directors' rights and Progressive's duties and obligations under the Progressive Policy with regard to the Underlying Claims.

81. Declaratory relief from this Court will terminate some or all of those controversies or disputes.

82. Pursuant to the provisions of the New Jersey Uniform Declaratory Judgments Act, N.J.S.A. 2A:16-50, *et seq.*, Pamrapo and the Individual Directors are entitled to a declaration by this Court of their rights and the duties of Progressive under the Progressive Policy regarding the Underlying Claims.

**WHEREFORE**, Pamrapo and the Individual Directors respectfully demand judgment in their favor and against Progressive:

> (1) Declaring and adjudging the rights and obligations of the parties to the Progressive Policy with respect to liabilities of Pamrapo and the Individual Directors arising from or in connection with the Underlying Claims as described herein;

> (2) Requiring Progressive to pay all "Loss" and to advance all "Defense

Costs" incurred by Pamrapo and the Individual Directors as a result of the Underlying Claims described herein in accordance with the applicable policy limits and retention(s) of the Progressive Policy;

(3) Granting Pamrapo and the Individual Directors money damages, including money damages available as supplemental relief under N.J.S.A. 2A:16-60, in an amount to be determined at trial, together with pre- and post-judgment interest;

(4) For costs of suit;

(5) For counsel fees pursuant to _R_. 4:42-9(a)(6); and

(6) For such other and further relief, including appropriate equitable relief, as the Court may deem just and proper.

## SECOND CAUSE OF ACTION

### (Breach of Contract)
**(Pamrapo and the Individual Directors against Progressive)**

83. The averments of paragraphs 1 through 82 are incorporated herein by reference as if set forth at length.

84. The Underlying Claims against the Individual Directors constitute "Claims" first made during the Policy Period against them as "Insured Persons" for "Wrongful Acts" for which they are legally obligated to pay, other than as "Loss" Pamrapo pays as indemnification.

85. The Underlying Claims against Pamrapo constitute "Claims" first made during the Policy Period against the Individual Directors as "Insured Persons" for "Wrongful Acts" for which Pamrapo has agreed to or is legally permitted or required by law to indemnify the Individual Directors.

86. The Underlying Claims against Pamrapo also constitute "Claims" first made during the Policy Period against Pamrapo for which Pamrapo is legally obligated to pay for "Wrongful Acts" which in whole or in part is based upon, arises from, or is in consequence of the purchase or sale of, or offer to purchase or sell, any securities issued by Pamrapo.

87. Pamrapo and the Individual Directors have incurred and will incur in the future "Loss" and/or "Defense Costs" payable under the Progressive Policy in connection with the Underlying Claims.

88. The "Loss" and/or "Defense Costs" incurred by Pamrapo and/or the Individual Directors include any amounts Pamrapo and/or the Individual Directors may ultimately be held liable to pay in connection with the May 9, 2012 Fees Order, and all amounts incurred to date in successfully seeking to stay enforcement of that Order against and/or the Individual Directors including, not limited to, all costs attendant to posting and maintaining the bond ordered to be paid by the Court.

89. Despite acknowledging coverage under the Progressive Policy for Pamrapo and the Individual Directors in connection with the Underlying Claims and advancing "Defense Costs" on behalf of Pamrapo and the Individual Directors, Progressive contends that any further coverage obligation(s) owed to Pamrapo and/or the Individual Directors in connection with the Underlying Claims is excess over an indemnity provision contained in the Merger Agreement between Pamrapo and BCB pursuant to condition G – Other Insurance or Indemnification to the Progressive Policy.

90. The indemnity agreement between BCB and Pamrapo did not become effective until the merger of Pamrapo into BCB was consummated on or about July 6, 2010, which was after the Underlying Claims were already pending against Progressive's insureds, and after the expiration of the policy period of the Progressive Policy on June 1, 2010.

91. Progressive misreads and misinterprets the indemnification undertaken by BCB in the Merger Agreement, and the Other Insurance or Indemnification condition as permitting Progressive to fundamentally alter the nature of the risk it insured, for which it accepted a

premium, and for which already-pending claims it had acknowledged coverage on behalf of its insureds.

92. Progressive's interpretation of the Other Insurance or Indemnification condition would eviscerate the coverage it agreed to provide under Insuring Agreement B – Company Indemnification Coverage – for Pamrapo to indemnify its directors and officers for "Claims" for "Wrongful Acts" covered under the Progressive Policy and already made prior to the effective date of the indemnity provision in Merger Agreement, thus rendering the coverage illusory.

93. Progressive's interpretation of the Other Insurance or Indemnification condition renders it excess over an apparently unlimited indemnity obligation, thus ensuring that it will never again have to pay any "Loss" or "Defense Costs" on behalf of its insureds.

94. Progressive's interpretation of the Other Insurance or Indemnification condition is also inconsistent with its own acceptance of coverage for Pamrapo and the Individual Directors and its payment of "Defense Costs" through the date of merger.

95. At a minimum, the Other Insurance or Indemnification condition is ambiguous and should be construed against Progressive.

96. Progressive has also failed to pay covered "Defense Costs" incurred by Pamrapo and the Individual Directors in connection with the May 9, 2012 Fees Order, and all amounts incurred to date in successfully seeking to stay enforcement of that Order against Pamrapo and the Individual Directors including, not limited to, all costs attendant to posting and maintaining the bond ordered to be paid by the Court.

97. Upon information and belief, all conditions precedent to Pamrapo's and the Individual Directors' claims for coverage under the Progressive Policy have been satisfied or waived.

98.  As a direct and proximate result of Progressive's breaches, it is liable to by Pamrapo and the Individual Directors for damages in an amount yet to be ascertained for all damages, costs and payments (whether by judgment, settlement or otherwise) and all other sums incurred to date by Pamrapo and the Individual Directors or which be incurred, together with the costs and disbursements of this action including, but not limited to, reasonable attorneys' fees and pre- and post-judgment interest.

**WHEREFORE**, Pamrapo and the Individual Directors respectfully demand judgment against Progressive:

(a)  Requiring Progressive to pay all "Loss" and to advance all "Defense Costs" incurred by Pamrapo and the Individual Directors as a result of the Underlying Claims described herein in accordance with the applicable policy limits and retention(s) of the Progressive Policy;

(b)  For money damages, together with pre- and post-judgment interest;

(c)  For costs of suit;

(d)  For attorneys' fees pursuant to $R$. 4:42-9(a)(6); and

(e)  For such other and further relief, including any equitable relief, as the Court may deem just and proper.

## THIRD CAUSE OF ACTION

### (Declaratory Judgment)
### (BCB and the Individual Directors against Colonial American)

99.  The averments of paragraphs 1 through 98 are incorporated herein by reference as if set forth at length.

100. The Underlying Claims against the Individual Directors constitute an "officer and director claim" first made against them, as "Insured Persons," during the policy period of the Colonial American Policy for a "director and officer wrongful act" for which they and/or BCB have incurred, and will in the future incur, "loss" and/or "defense expenses" payable under the Colonial American Policy.

101. The Underlying Claims against BCB constitute "entity claims" first made against BCB during the policy period of the Colonial American Policy for an "entity wrongful act" for which BCB has incurred, and will in the future incur, "loss" and/or "defense expenses" payable under the Colonial American Policy.

102. Upon information and belief, all conditions precedent to these claims for coverage under the Colonial American Policy have been satisfied or waived.

103. An actual, present and justiciable controversy exists between BCB, the Individual Directors and Colonial American with respect to BCB's and the Individual Directors' rights and Colonial American's duties and obligations under the Colonial American Policy with regard to the Underlying Claims.

104. Declaratory relief from this Court will terminate some or all of those controversies or disputes.

105. Pursuant to the provisions of the New Jersey Uniform Declaratory Judgments Act, N.J.S.A. 2A:16-50, *et seq.*, BCB and the Individual Directors are entitled to a declaration by this Court of their rights and the duties of Colonial American under the Colonial American Policy regarding the Underlying Claims.

**WHEREFORE**, BCB and the Individual Directors respectfully demand judgment in its favor and against Colonial American:

(1) Declaring and adjudging the rights and obligations of the parties to the Colonial American Policy with respect to liabilities of Plaintiffs arising from or in connection with the Underlying Claims as described herein;

(2) Requiring Colonial American to pay all "loss" and to advance all "defense expenses" payable under the Colonial American Policy;

(3) Granting BCB money damages, including money damages available as supplemental relief under N.J.S.A. 2A:16-60, in an amount to be determined at trial, together with pre- and post-judgment interest;

(4) For costs of suit;

(5) For counsel fees pursuant to <u>R</u>. 4:42-9(a)(6); and

(6) For such other and further relief, including appropriate equitable relief, as the Court may deem just and proper.

## FOURTH CAUSE OF ACTION

### (Breach of Contract)
### (BCB against Colonial American)

106. The averments of paragraphs 1 through 105 are incorporated herein by reference as if set forth at length

107. The Underlying Claims against BCB constitute "entity claims" first made against BCB during the policy period of the Colonial American Policy for an "entity wrongful act" for which BCB has incurred, and will in the future incur, "loss" and/or "defense expenses" payable under the Colonial American Policy.

108. The "loss" and/or "defense expenses" incurred by BCB include any amounts BCB may ultimately be held liable to pay in connection with the May 9, 2012 Fees Order, and all amounts incurred to date in successfully seeking to stay enforcement of that Order against BCB including, not limited to, all costs attendant to posting and maintaining the bond ordered to be paid by BCB.

109. Despite acknowledging coverage for BCB in connection with the Underlying Claims and agreeing to advance "defense expenses" incurred on behalf of BCB in connection with the Underlying Claims, to date, Colonial American has failed to and/or refused to advance such "defense costs" presented to it in breach of the Colonial American Policy.

110. As a direct and proximate result of Colonial American's breaches, it is liable to BCB for damages in an amount yet to be ascertained for all damages, costs and payments (whether by judgment, settlement or otherwise) and all other sums incurred to date by BCB or

which be incurred, together with the costs and disbursements of this action including, but not limited to, reasonable attorneys' fees and pre- and post-judgment interest.

**WHEREFORE**, BCB respectfully demands judgment in its favor and against Colonial American:

    (a)    Requiring Colonial American to pay all "loss" and to advance all "defense expenses" incurred by BCB as a result of the Underlying Claims described herein in accordance with the applicable policy limits and retention(s) of the Colonial American Policy;

    (b)    For money damages, together with pre- and post-judgment interest;

    (c)    For costs of suit;

    (d)    For attorneys' fees pursuant to _R_. 4:42-9(a)(6); and

    (e)    For such other and further relief, including any equitable relief, as the Court may deem just and proper.

### FIFTH CAUSE OF ACTION

#### (Breach of Contract)
#### (BCB and the Individual Directors against Colonial American)

111. The averments of paragraphs 1 through 110 are incorporated herein by reference as if set forth at length

112. To the extent it is found that Progressive's primary coverage obligations to the Individual Directors have been extinguished by BCB's acquisition and/or assumption of liabilities as of the effective date of the merger (which is denied), then Colonial American must provide such primary coverage for any liability claim based upon or attributable to or arising from such acquired or assumed liabilities.

113. Colonial American wrongfully denied coverage to the Individual Directors and/or BCB because, as "Insured Persons" as of the effective date of assumption of the assets and liabilities of Pamrapo, the Individual Directors were entitled to coverage under the Colonial American Policy.

114. As a direct and proximate result of Colonial American's breaches, it is liable to BCB and the Individual Directors for damages in an amount yet to be ascertained for all damages, costs and payments (whether by judgment, settlement or otherwise) and all other sums incurred to date by BCB and/or the Individual Directors or which will be incurred, together with the costs and disbursements of this action including, but not limited to, reasonable attorneys' fees and pre- and post-judgment interest.

**WHEREFORE**, BCB and the Individual Directors respectfully demand judgment in their favor and against Colonial American:

(a)   Requiring Colonial American to pay all "loss" and to advance all "defense expenses" incurred by the Individual Directors and/or by BCB as indemnification as a result of the Underlying Claims described herein in accordance with the applicable policy limits and retention(s) of the Colonial American Policy;

(b)   For money damages, together with pre- and post-judgment interest;

(c)   For costs of suit;

(d)   For attorneys' fees pursuant to <u>R</u>. 4:42-9(a)(6); and

(e)   For such other and further relief, including any equitable relief, as the Court may deem just and proper.

## SIXTH CAUSE OF ACTION

### (Apportionment and Allocation)
### (Against Colonial American and Progressive)

115. The averments of paragraphs 1 through 114 are incorporated herein by reference as if set forth at length.

116. Under the Progressive Policy, Progressive agreed to pay covered "Loss," which includes "Defense Costs" and any amount Pamrapo and the Individual Directors are legally obligated to pay resulting from the Underlying Claims, including damages, judgments, settlements and pre- and post-judgment interest.

117. Under the Colonial American Policy, Colonial American agreed to pay covered "loss," which includes any amount BCB is legally obligated to pay as a result of the Underlying Claims, including damages, judgments, prejudgment and post-judgment interest, settlements and "defense expenses."

118. To the extent required and/or possible, such "Loss" incurred by BCB, Pamrapo and/or the Individual Directors should be apportioned between the Progressive Policy and the Colonial American Policy.

**WHEREFORE,** Plaintiffs respectfully demand judgment in their favor and against Progressive and Colonial American:

(a)     Determining an appropriate apportionment and/or allocation of defense costs and indemnity payments incurred by BCB, Pamrapo and Individual Directors in connection with the Underlying Claims under applicable provisions of the Progressive Policy, the Colonial American  Policy, principles of equity, and/or applicable law;

(b)     For costs of suit;

(c)     For attorneys' fees pursuant to R. 4:42-9(a)(6); and

(d) .   For such other and further relief, including any equitable relief, as the Court may deem just and proper.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to _R_. 4:25-4, Jennine DiSomma is hereby designated as trial counsel for Plaintiffs.

**SAIBER LLC**
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932-2266
TEL: (973) 622-3333
FAX: (973) 622-3349
_Attorneys for Plaintiffs_

By: _____
JENNINE DiSOMMA

Dated: February 1, 2013

## CERTIFICATIONS

Pursuant to <u>R.</u> 4:5-1, the undersigned hereby certifies that, to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding except for the action entitled "In Re Pamrapo Bancorp Shareholder Litigation," Superior Court of New Jersey, Hudson County, Law Division, HUD-L-3608-12. I further certify that, to the best of my knowledge, no other action or arbitration proceeding is contemplated and no other parties should presently be joined in this action.

Pursuant to <u>R.</u> 1:38-7(c), the undersigned certifies that confidential personal identifiers have been redacted from documents now submitted to the Court, and will be redacted from all documents in the future.

**SAIBER LLC**
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932-2266
TEL: (973) 622-3333
FAX: (973) 622-3349
*Attorneys for Plaintiffs*

By: _____
JENNINE DiSOMMA

Dated: February 1, 2013