**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| |
|---|
| BCB BANCORP, INC., *et al*, |
| *Plaintiffs*, |
| v. |
| PROGRESSIVE CASUALTY INSURANCE CO., *et al*, |
| *Defendants*. |

Civil Action No. 13-1261

**OPINION**

**John Michael Vazquez, U.S.D.J.**

The matter comes before the Court on Plaintiffs' motion for partial summary judgment (D.E. 119), and Defendant Progressive Casualty Insurance Co.'s ("Progressive" or "Defendant") cross-motion for summary judgment (D.E. 120).[1] Plaintiffs[2] and Defendant each oppose the other's motion. D.E. 122, 123. The Court reviewed all submissions, and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Plaintiffs' motion is **GRANTED,** and Defendant's motion is **DENIED**.

---

[1] In this Opinion Plaintiffs' brief in support of its motion (D.E. 119) will be referred to as "Pl. Br." Defendants' brief in support of its motion (D.E. 120) will be referred to as "Def. Br." Plaintiffs' brief in opposition (D.E. 122) will be referred to as "Pl. Opp." Defendants' reply brief (D.E. 123) will be referred to as "Def. Rep." The Court has reviewed all filings. The substantive arguments in both the motion and the cross-motion are nearly identical. As a result, unless necessary, the Opinion often cites to Pl. Brf. although the same issue was raised in Def. Br.

[2] Plaintiffs include BCB Bancorp, Inc. ("BCB") and former directors and officers at Pamrapo Bancorp, Inc. (the "Individual Directors").

## I. BACKGROUND

This insurance dispute stems from a corporate merger between two banks, BCB and Pamrapo Bancorp, Inc. ("Pamrapo"), who is not a party. As will be discussed, Plaintiffs were all named as defendants in a New Jersey state court shareholder class action that led to the instant insurance coverage litigation. The underlying matter stemmed from the merger of Pamrapo and BCB.

The Policy

Prior to the merger, Pamrapo had a "claims-made"[3] directors and officers liability insurance policy (the "Policy") with Progressive covering the period from June 15, 2009 through June 1, 2010 (the "Policy Period"). Plaintiffs' Statement of Material Facts ("Plfs' SOMF") ¶¶ 17, 21. The "Company," according to the terms of the Policy, was comprised of four Pamrapo entities. *Id.* ¶ 24. All of Pamrapo's officers and directors, including the individual director Plaintiffs ("Individual Directors") here, were "Insured Person[s]" as defined in the Policy.[4] *Id.* ¶ 19. Pursuant to the Policy, Progressive was to provide coverage for a loss resulting from claims made during the Policy Period against the insured.[5] Progressive was obligated to cover loss that "the

---

[3] A "claims made" policy is different than an "occurrence" policy. *See Zuckerman v. National Union Fire Ins. Co.*, 100 N.J. 304, 310 (1985). In the former, timely notification to the insurance company by the insured of the claim is part and parcel of the policy itself. *Id.*. at 324 ("[T]he event that invokes coverage under a 'claims made' policy is transmittal of notice of the claim to the insurance carrier."). In an occurrence policy, by comparison, insurance covers pertinent events that occur while the policy is in effect even if the insured does not learn of the claim until after the policy has expired.

[4] "Insured Person" included "any past, present or future director, member of the board of trustees, officer, [or] Employee." Declaration of Michael S. Steinberg ("Steinberg Decl.") Ex. 1 at PIC-00268.

[5] "Loss" is defined as "defense costs and any which the Insured is legally obligated to pay resulting from a Claim, including damages, judgment, settlements, and pre- and post-judgement interest."

2

Company has agreed to or is legally permitted or required by law to indemnify the Insured Persons." *Id.* ¶ 20.

Nevertheless, under the "Other Insurance or Indemnification" provision, Progressive's coverage was to be excess coverage if there was any other non-excess insurance available or if an insured was entitled to indemnification from "any entity other than the Company." *Id.* ¶ 22. The provision provided as follows:

> This Policy shall not be subject to the terms of any other insurance. All Loss, including Defense Costs, payable under this Policy shall be excess to:
>
> (1) any other existing insurance regardless of whether collectable, including but not limited to, any insurance under there is a duty to defend, unless such other insurance is written only as specific excess insurance over the Limits of Liability providing by this Policy; and
>
> (2) indemnification to which an Insured is entitled from any entity other than the Company.

Progressive's Statement of Material Facts Not in Dispute ("Progressive's SOMF") ¶ 11.

Although the Policy included a section entitled "Mergers and Acquisitions," it is not applicable to this dispute as it addressed coverage for additional employees that Pamrapo may have acquired through a merger or acquisition during the Policy Period. Plfs' SOMF ¶ 26. Here, the merger between Pamrapo and BCB occurred after the Policy Period. Significantly, however, the Policy does not expressly exclude coverage for the surviving entity of a merger that occurred outside of the Policy Period.

---

Steinberg Decl. Ex. 1 at PIC-00294. "Claim" includes "a civil proceeding commenced by the service of a complaint." *Id.* at 6.

3

## The Merger

On June 30, 2009, Pamrapo and BCB announced that they had signed a merger agreement ("Merger Agreement") pursuant to which Pamrapo would merge into BCB. *Id.* ¶ 5. The merger was consummated on July 6, 2010 after final shareholder and board approval. As set forth the in the Merger Agreement, Pamrapo was merged with and into BCB; thus, BCB was the surviving entity. *Id.* ¶ 9. The merger was effected "in accordance with the New Jersey Business Corporation Act ("NJBCA")," and the entities agreed that the merger "shall have the effects set forth in the NJBCA." *Id.* ¶ 10.

In addition, the Merger Agreement provided that BCB "shall indemnify and hold harmless" Pamrapo's employees, including its officers and directors, as to defined claims[6] to the fullest extent that the employees would have been entitled to under Pamrapo's Certificate of Incorporation, bylaws, or certain disclosed agreements. *Id.* ¶ 11. Pamrapo's Certificate of Incorporation, in turn, provided that Pamrapo would indemnify its officers and directors to the fullest extent authorized by the NJBCA. Steinberg Decl. Ex. 13, Art. 10. Specifically, the Certificate of Incorporation stated as follows:

> Each person who was or is made a party or is threatened to be a made a party to or is otherwise involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), by reason of the fact that he or she is or was a director or an officer . . . shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the New Jersey Business Corporation Act . . .

*Id.*

---

[6] The parties do not dispute that the underlying shareholder class action qualified as a claim under BCB's indemnification provision.

4

Schedule 3.37 of Pamrapo's Disclosure Schedule for the merger recognizes that Pamrapo's directors were involved in the class action suit and that these claims were subject to coverage under the Policy. Declaration of Jennine Disomma ("Disomma Decl.") Ex. 8, Sched. 3.37.

The Underlying Class Action Litigation

Shortly after the merger was announced, two Pamrapo shareholders filed separate shareholder derivative class action suits in New Jersey state court against Pamrapo, the Individual Directors, and BCB. Plfs' SOMF ¶ 6. The suits sought to enjoin the merger and sought other relief. *Id.* The first, the *Kube* matter, was filed on July 9, 2009. The second, the *Shaev* matter, was filed on July 24, 2009. Progressive's SOMF ¶¶ 24-26. The matters were consolidated, and the class action plaintiffs filed a single amended complaint, alleging claims for breach of fiduciary duty against the Pamrapo directors and claims for aiding and abetting the breach of fiduciary duty against BCB and Pamrapo. Plfs' SOMF ¶ 7-8. The class action plaintiffs filed a second amended complaint almost a year after the merger closed, but after summary judgment, only the direct claims against the Individual Directors and the aiding and abetting claim as to BCB survived. *Id.* ¶¶ 13-15. On December 23, 2014, the remaining parties entered into a stipulation of settlement that was ultimately approved by the state judge on September 21, 2015. *Id.* ¶ 16.

The Coverage Dispute

Pamrapo notified Progressive of the shareholder class action by letter on August 21, 2009, seeking coverage for defense costs for the individual directors and the bank. *Id.* ¶ 30. On December 4, 2009, Progressive acknowledged coverage for the shareholder action and reserved its rights under the Policy. *Id.* ¶ 30. Specifically, Progressive recognized that the class action qualified as a claim made within the Policy Period and that the Individual Directors and Pamrapo may be entitled to coverage. *Id.* ¶¶ 31-32. Progressive agreed to advance "defense costs" incurred

on behalf of Pamrapo and its directors, subject to its reservation of rights, and after Pamrapo exhausted its $125,000 retention. *Id.* ¶ 34. In addition, Progressive acknowledged potential coverage for Pamrapo to the extent that it was required to indemnify the Individual Directors, but also indicated that the directors may be entitled to indemnification from another source, which would trigger the "Other Insurance or Indemnification Provision." Progressive's SOMF ¶ 46.

Pamrapo indemnified the Individual Directors by paying their legal fees in connection with the shareholder litigation until June 6, 2010, when the merger closed. Plfs' SOMF ¶¶ 36-37. In so doing, Pamrapo first satisfied the $125,000 retention required under the Policy. *Id.* ¶ 38. Progressive seems to believe that it did not have a duty to defend at this point. It claimed that Pamrapo, instead, had the duty to defend claims under the Policy. Progressive's SOMF ¶¶ 5-6. However, subject to its reservation of rights, Progressive reimbursed Pamrapo for a portion of the defense costs. Progressive SOMF ¶ 33-34. Progressive made this partial payment to BCB following the merger. Plfs' SOMF ¶ 49. Progressive Statement in Response to Plaintiffs' Statement of Undisputed Material Facts ¶ 49.

Through a letter dated July 30, 2009, however, Progressive informed BCB that its indemnification coverage post-merger, was now "excess of [BCB's] indemnification obligation" and formally disclaimed coverage. Plfs' SOMF ¶¶ 39-41. Progressive claimed that the Individual Directors were now entitled to indemnification from BCB, pursuant to the Merger Agreement, and such indemnification triggered the "Other Insurance and Indemnification" provision of the Policy. BCB demanded payment from Progressive for defense costs incurred on behalf of the Individual Directors post-merger; Progressive refused to pay. *Id.* ¶¶ 45-46. Consequently, BCB has paid for the post-merger defense costs related to the Individual Directors in the shareholder litigation. *Id.* ¶ 47.

## II. PROCEDURAL HISTORY

Plaintiffs initially filed this matter in New Jersey state court, and it was removed to this Court in March 2013.[7] D.E.1. Plaintiffs thereafter filed a First Amended Complaint on December 8, 2014, D.E. 59, to which Progressive filed an Answer, D.E. 90. As pertinent to the current motion, Plaintiffs made three claims against Progressive: declaratory judgment, breach of contract, and breach of the covenant of good faith and fair dealing. D.E. 59. Concerning the declaratory judgment claim, Plaintiffs seek a declaration of the rights and duties of Progressive under the Policy regarding coverage for the shareholder action. *Id.*

Plaintiffs filed the current motion seeking summary judgment as to their declaratory judgment claim. Plaintiffs specifically seek a declaration that BCB has the right to reimbursement from Progressive under the Pamrapo Policy for BCB's post-merger defense costs vis-à-vis the Independent Directors. Relatedly, Plaintiffs seek a declaration that they are not barred from reimbursement by the "Other Insurance or Indemnification" provision of the Policy. Because this underlying dispute involves a merger pursuant to the NJBCA, Plaintiffs contend that BCB, as the surviving entity, obtained all of the contractual rights and liabilities of Pamrapo. Plaintiffs argue that, therefore, it follows that BCB retained Pamrapo's Policy rights with Progressive, including Pamrapo's right to reimbursement. *See generally* Pl. Br., D.E. 119.

---

[7] BCB also incurred its own costs related to the shareholder litigation because it was a named defendant. BCB had its own "claims-made" policy with Colonial American at the time of the merger. As a result, BCB brought coverage claims against Colonial America in this instant litigation regarding the reimbursement of its own defense costs but these claims were settled in 2015. Consequently, those costs are no longer at issue.

7

Progressive filed a cross-motion for summary judgment as to all three counts. Progressive alleges that because BCB[8] is not a "Company" under the Policy, Progressive is not required to reimburse BCB for any post-merger defense costs. Progressive further asserts that the "Other Insurance or Indemnification" provision also bars the reimbursement sought by BCB. *See generally* Def. Br., D.E. 120.

### III. SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

---

[8] Throughout its papers, Progressive continually refers to BCB as the "Uninsured Entity." Of course, the very issue before the Court is whether BCB is entitled to reimbursement pursuant to the terms of Pamrapo's Policy with Progressive. The Court guesses that that Progressive believed that use of such a label – Uninsured Entity – was somehow beneficial or persuasive. Given the central issue in the case, the Court finds it to be presumptuous at best.

8

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

## IV. DISCUSSION

The parties do not dispute that Pamrapo had a valid, "claims made" Policy with Progressive. Nor do they dispute that Pamrapo filed a timely claim and that it was entitled to coverage under the Policy. The parties, moreover, do not dispute that the Pamrapo and BCB merger was effected in accordance with the NJBCA, which has been referred to as a "statutory" merger.

Under the NJBCA, the surviving corporation of a merger in essence steps into the shoes of the merged entity for purposes of the merged entity's rights and liabilities. Specifically the

9

surviving company "possess[es] all the rights, privileges, powers, [and] immunities . . . of each of the merging or consolidating corporations." N.J.S.A. § 14A:10-6(c). In addition, the surviving corporation "shall be liable for all the obligations and liabilities of each of the corporations so merged." *Id.* § 14A:10-6(e). In short, the surviving company takes the good and the bad, *i.e.* the right and liabilities, of the entity that merged with it. Thus, all real and personal property of the merged entity is automatically vested in the surviving company and the merged entity ceases to exist. *Id.* § 14A:10-6(b); (d). Pamrapo's rights and liabilities, therefore, became BCB's rights and liabilities as a result of the merger. *See, e.g., DBA Distribution Servs., Inc. v. All Source Freight Sols., Inc.*, No. 11-3901, 2012 WL 845929, at *4 (D.N.J. Mar. 13, 2012) (act of merger caused transfer of agreement to surviving entity by operation of law); *NovaSeptum AB v. Amesil, Inc.*, No. 05-5175, 2010 WL 5620906, at *2 n.2 (D.N.J. Dec. 29, 2010) (finding that surviving entity had standing to enforce consent order of merged entity); *see also Tordella v. Infoshare, Inc.*, No. A-1038-13T2, 2014 WL 8844678, at *8 (N.J. App. Div. May 19, 2015) (stating that in a statutory merger "all of the liabilities of a former corporation attach to the surviving corporation").

The NJBCA does not exclude insurance policies of the entity that merged into the surviving entity. *See Fed. Ins. Co. ex rel Associated Aviation Underwriters v. Purex Indus., Inc.*, 972 F. Supp. 872, 890 (D.N.J. 1997) ("Assuming for the sake of argument, however, that Purex is the surviving corporation of a merger transaction, it is true as a matter of law that the insurance policy previously owned by Airwork would have transferred to Purex along with the other assets involved in the transaction, absent a specific provision in the policy to the contrary."); *Brunswick Corp. v. St. Paul Fire & Marine Ins. Co.*, 509 F. Supp. 750, 752-53 (E.D. Pa. 1981) (concluding that under substantially similar law, the surviving company "simply stands in the same position as that occupied by the merger corporation prior to the merger" despite the existence of a general anti-

assignment clause in insurance policy). Therefore, by operation of law, Pamrapo's Policy from Progressive was transferred to BCB when the statutory merger was consummated.

Progressive ignores this clear statutory construct by arguing that it is not required to reimburse the Individual Directors post-merger because BCB is not the "Company" as defined by the Policy. Pl. Br. at 16. But the fact that BCB is not encompassed by the definition of Company under the Policy is overcome by the legal effect of the NJBCA. As recognized by Progressive, Pamrapo's Policy required Progressive to reimburse Pamrapo for defense costs that its Individual Directors incurred in the shareholder litigation. Plfs' SOMF ¶¶ 30-34; Progressive Statement in Response to Plaintiffs' Statement of Undisputed Material Facts ¶ 49. Through the statutory merger, the Policy and the rights under the Policy transferred to BCB such that BCB is now effectively the insured. N.J.S.A. § 14A:10-6. At a minimum, BCB is entitled to the same coverage that Pamrapo was entitled to under the Policy. Therefore, as was the case before the merger, Progressive, after the merger, was obligated to cover defense costs for the Individual Directors.

Progressive, for the most part, does not address the NJBCA or its legal effect. Instead, it discusses many of the Policy's provisions, including the anti-assignment provision. As noted, the anti-assignment provision concerned assignments during the Policy Period and was silent as to those that occurred later. While not binding on this Court, *Lime Tree Associates, LLC v. Burlington Insurance Company*, is instructive on this issue. No. 13-6017, 2014 WL 6685414 (D.N.J. Nov. 25, 2014).

In *Lime Tree*, Burlington Insurance Company ("Burlington") issued Lime Tree Associates a general liability insurance policy. During the policy period, Lime Tree Associates filed a claim for coverage after an event occurred on its property. *Id.* at *1. After the policy expired, Lime Tree Associates merged into Lime Tree LLC pursuant to the New Jersey Uniform Partnership Act

11

("NJUPA"). *Id.* at *2. Much like Progressive here, Burlington denied coverage to Lime Tree LLC after the merger because Lime Tree LLC did not meet the definition of insured under the insurance policy. Burlington argued that despite the effect of the statutory merger, the policy language controlled coverage. *Id.* at *3. In support of its argument, Burlington relied upon two provisions in the policy: the anti-assignment clause and the new entities exclusion. *Id.* The former prevented the insured from assigning its rights under the policy without Burlington's written consent; the latter excluded coverage, in certain circumstances, for the insured if the insured formed a new entity. *Id.*

Judge Hayden rejected Burlington's argument, relying on the reasoning of *Purex Indus., Inc., DBA Distribution Servs., Inc.,* and *Segal v. Greater Valley Terminal Corp.*, 83 N.J. Super. 120 (App. Div. 1964), among others. *Id.* at *4-6. First, she recognized that in a statutory merger under the NJUPA, the surviving entity is automatically vested with all property and debts of the merged business entities. *Id.* at *4. Next, Judge Hayden concluded that in order to prevent such a statutory transfer of rights there must be explicit contractual language preventing the transfer. *See id.* at *3 ("[T]he exclusionary language must have anticipated such a transfer and purposefully prevented it."). Burlington's policy with Lime Tree Associates did not contain the necessary exclusionary language. A general anti-assignment clause did not suffice. *Id.* at *5. Moreover, the new entity exclusion did not apply because the new entity, Lime Tree LLC, was merely "a continuation of Lime Tree Associates[,]" the insured. *Id.* Consequently, because the Lime Tree merger caused all rights and benefits under the policy to be transferred to Lime Tree LLC, Burlington could not disclaim coverage. *Id.* at *4.

Judge Hayden also discussed the purpose of an anti-assignment provision: "The rationale for no assignment clauses is simple and pragmatic: the clause protects insurers from the unforeseen

risks by requiring the insurer's approval prior to transfer." *Id.* at *6. Judge Hayden found, however, that "the need for such protection abates entirely when the transfer or assignment occurs *after* the event giving rise to coverage because by that time the risk is no longer unforeseen." *Id.* (emphasis added) (citing *Purex*, 972 F. Supp. at 889; 3 *Couch on Insurance* § 35.8). Finally, Judge Hayden determined that her ruling was in accord with New Jersey law regarding insurance contract interpretation, specifically requiring courts to construe a policy consistent with the reasonable expectation of the insureds when the policy language was not sufficiently clear. *Id.* (citing *Sparks v. St. Paul Ins. Co.*, 100 N.J. 325, 495 (N.J. 1985)).

As noted, the Court finds the decision and reasoning of *Lime* Tree to be persuasive. Although *Lime Tree* dealt with a merger under the NJUPA, a statutory merger under the NJBCA results in a virtually identical outcome concerning the rights and liabilities of the surviving entity. *Compare* N.J.S.A. ¶ 42:1A-46(g), *with* N.J.S.A. § 14A:10-6(c). Accordingly, this Court concludes an insurance contract must contain specific exclusionary language to prevent a transfer of rights to the surviving entity under the NJBCA. In this instance, the Policy does not contain the necessary, specific exclusionary language. In fact, the Policy does not contain any explicit exclusionary language as to the effect of a post-Policy merger or assignment. As to Progressive's repeated arguments that such an interpretation will deprive it of the benefit of its bargain and force it to incur unforeseen risks, the Court likewise agrees with the cogent reasoning of *Lime Tree* concerning assignments or transfers that occur *after* the insured event, as is the case here. Pamrapo made a valid claim covered by the Policy within the Policy Period; the merger with BCB did not occur until well after the Policy Period expired.

Moreover, the majority of the cases that Progressive cites to support its argument address the results of an asset purchase agreement, not a statutory merger. *See* Progressive Br. at 18-19.

There are material differences between a statutory merger and an asset purchase. *See, e.g., Dep't of Tranp. v. PSC Res., Inc.*, 175 N.J. Super. 447, 453 (App. Div. 1980) (explaining that "[c]orporate successor liability is dependent upon the structure of the corporate acquisition"). Most importantly for purposes of the current motions, is the fact that N.J.S.A. § 14A:10-6 does not apply to asset purchase deals. The cases that Progressive relies on were not dealing with a statutory transfer of rights and liabilities. In addition, the general rule regarding corporate liability after an asset purchase is that the successor entity does not retain the assets and liabilities of the selling company (unless they were provided for in the purchase agreement). *Mettinger v. Globe Slicing Mach. Co., Inc.*, 153 N.J. 371, 380 (1998). Of course, the NJBCA says the opposite. Consequently, Progressive's cases are inapposite. Accordingly, the Court does not agree with Progressive's argument that the definition of "Company" under the policy precludes BCB's recovery.[9]

Progressive also claims that the "Other Insurance or Indemnification" provision in the Policy entitles it to relief. Progressive relies on the Policy language that indicates loss and defense costs payable under the Policy "shall be excess to . . . indemnification to which an Insured is entitled from any entity other than the Company." Progressive asserts that because BCB is contractually bound to provide indemnification pursuant the Merger Agreement, the provision controls. Progressive makes several arguments in support of its position. The Court finds none of them persuasive.

---

[9] Progressive also maintains that requiring it to cover defenses costs post-merger is improper because it would provide BCB with more coverage than Pamrapo was entitled to receive. But paying defense costs to the Individual Directors does not exceed the coverage that Pamrapo paid to receive under the Policy. BCB is simply seeking to continue the coverage that Progressive already recognized it was required to provide under the Policy and partially paid. Indeed, adopting Progressive's position would result in a windfall to Progressive as Pamrapo paid its premiums for such coverage.

14

Progressive's asserts that Pamrapo could have negotiated different indemnification terms in the Merger Agreement so that it would not have had to indemnify the Individual Directors. Def. Br. at 27. This argument misses the mark because it ignores the effect of the NJBCA. As discussed, BCB assumed all of Pamrapo's rights and liabilities pursuant to the statutory merger. One such liability was Pamrapo's obligation to indemnify its officers and directors, as set forth in Pamrapo's Certificate of Incorporation. Steinberg Decl. Ex. 13. Thus, even if the Merger Agreement did not contain an indemnification provision, BCB was nevertheless bound to indemnify the Individual Directors due to the statutory merger.

More fundamentally, Progressive's position ignores the effect of the statutory merger. Progressive's argument concerning the "Company" in the "Other Insurance or Indemnification" provision is essentially the same as Progressive's earlier assertion concerning the "Company" and coverage in the first instance. The Court has already rejected this argument for the reasons stated. It would certainly be an untenable result if the definition of "Company" did not prevent BCB from obtaining Pamrapo's rights under the Policy but nevertheless precluded BCB from recovery pursuant to the "Other Insurance or Indemnification" provision.

Finally, Progressive also takes issue with Plaintiffs' argument that in making payment to BCB for pre-merger defense costs, Progressive conceded that BCB is now Pamrapo for purposes of the Policy. Def. Br. at 21-22. As noted, following the merger, Progressive sent BCB a payment due to Pamrapo under the Policy. Progressive provides no legal authority to support its position that the partial payment should not be construed as a concession or admission. Instead, Progressive's payment reflects the reality of the statutory merger - it could only send the payment to BCB as BCB had acquired all the rights and liabilities of Pamrapo through the merger and Pamrapo thereafter ceased to exist.

In sum, BCB is entitled to Pamrapo's rights under the Policy by operation of law. Consequently, Plaintiffs' motion for summary judgment is granted. As a result, Progressive's cross-motion for summary judgment must necessarily be denied. BCB has the right to reimbursement from Progressive under the Pamrapo Policy for BCB's post-merger defense costs vis-à-vis the Independent Directors. Plaintiffs are not barred from reimbursement by the "Other Insurance or Indemnification" provision of the Policy.

## V. CONCLUSION

For the reasons set forth above and for good cause shown, Plaintiffs' motion for partial summary judgment (D.E. 119) is **GRANTED** and Defendant's cross-motion (D.E. 120) is **DENIED**. An appropriate Order accompanies this Opinion.

Date: September 18, 2017

*[signature]*
John Michael Vazquez, U.S.D.J.